UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RANDY SMITH,

    Petitioner,

v.                                                                 Case No. 08-cv-12883

JOHN BOYNTON,

    Respondent.

_____/

**OPINION AND ORDER DENYING PETITIONER'S MOTION TO VACATE,
CORRECT, OR SET ASIDE SENTENCE PURSUANT TO 28 U.S.C. § 2254 AND
DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY**

Pending before the court is Petitioner Randy Smith's "Motion to Vacate, Correct, or Set Aside the Petitioner's Sentence Pursuant to 28 U.S.C. § 2254." Respondent John Boynton urges the court to deny Petitioner's motion. Having reviewed the pleadings and record, the court concludes that Petitioner is not entitled to relief and his petition will be denied. Further, the court declines to issue a certificate of appealability.

**I. BACKGROUND**

Petitioner was charged in Oakland County, Michigan with second-degree murder, Mich. Comp. Laws § 750.317; common law manslaughter as codified in Mich. Comp. Laws § 750.321; intentionally aiming a weapon without malice, statutory manslaughter under Mich. Comp. Laws § 750.329; and possession of a firearm during the commission of a felony (felony firearm), Mich. Comp. Laws § 750.227b. The charges arose from the fatal shooting of Ashleigh Moomaw[1] in Petitioner's Hazel Park home on December 7,

---

[1] In the transcript of trial, Ms. Moomaw's first name is spelled "Ashley," but the Michigan Court of Appeals used the spelling "Ashleigh" in its decision. For the sake of

2003. Before trial, the two manslaughter charges were dismissed. The case proceeded to trial on the murder and felony firearm charges. The Michigan Court of Appeals summarized the evidence as follows:

> Ms. Moomaw came to defendant's home [on December 7, 2003] with her friend, Jaimie Crawford, upon defendant's invitation. When Ms. Moomaw and Ms. Crawford first arrived, defendant had other guests, including Darrin Teed. Defendant showed Mr. Teed a .22 caliber gun that he kept in a kitchen drawer. Defendant then removed another handgun from his pocket. Defendant described the weapon to Mr. Teed as a .25 caliber that held six shots in the clip and a seventh in the barrel. Defendant removed the clip and Mr. Teed observed that the clip was fully loaded.
>
> Shortly thereafter, everyone departed, leaving Ms. Moomaw and Ms. Crawford alone with defendant. Defendant and Ms. Moomaw sat together on a couch in the living room. Ms. Crawford testified that she twice saw defendant point a gun at Ms. Moomaw's head and heard him tell her to repeat, "Say I won't do it." Although Ms. Crawford testified that defendant's conduct made her feel uncomfortable, she testified that Ms. Moomaw did not appear frightened. Ms. Crawford testified that she glanced away briefly and heard a single gunshot. When she looked back, Ms. Crawford saw Ms. Moomaw lying motionless on the floor while defendant stood over her with the gun still in his hand. Defendant told Ms. Crawford that they needed to leave the house and asked her to tell people that Ms. Moomaw shot herself. Defendant and Ms. Crawford initially left the house together on foot. They eventually separated and Ms. Crawford ran to the home of a friend where she called the police.
>
> The medical examiner testified that Ms. Moomaw died within minutes of being shot. Investigators later discovered .25 and .22 caliber ammunition in defendant's living room and a .22 caliber pistol in his backyard. Five houses away, they discovered the discarded .25 caliber gun, a paper towel, and $110. The .25 caliber gun still had four live rounds in the clip and one in the chamber, and the safety was off. Subsequent tests revealed that the weapon functioned properly and only fired when at least seven pounds of pressure was applied to the trigger.

*People v. Smith*, No. 256066, 2005 WL 3500871, at *1 (Mich. Ct. App. Dec. 22, 2005).

---

consistency, the court will adopt the spelling used by the Michigan Court of Appeals.

Petitioner did not testify nor present any witnesses. His defense was that he was guilty of the lesser-included offense of manslaughter. His attorney argued that Petitioner did not intend to shoot Ms. Moomaw and the gun accidentally discharged. The jury was instructed under the "catch-all" involuntary manslaughter statute, Mich. Comp. Laws § 750.321, as a lesser-included offense to the murder charge. On April 13, 2004, the jury found Petitioner guilty of second-degree murder and felony firearm. The trial court sentenced Petitioner to thirty to fifty years imprisonment for the murder conviction and to a consecutive term of two years imprisonment for the felony-firearm conviction.

Petitioner appealed his convictions as of right. He claimed that (1) the trial court erroneously admitted evidence of prior shootings, (2) the trial court should have granted his request for a jury instruction on statutory involuntary manslaughter under Mich. Comp. Laws § 750.329, (3) the evidence was insufficient to support his murder conviction, (4) the prosecutor made an improper appeal to the jury's sympathy, and (5) he was entitled to resentencing under *Blakely v. Washington*, 542 U.S. 296 (2004). The Michigan Court of Appeals agreed that the trial court should have instructed the jury on statutory involuntary manslaughter under Mich. Comp. Laws § 750.329. The Court of Appeals therefore reversed Petitioner's convictions and remanded his case for a new trial. *See Smith*, 2005 WL 3500871 at *4.

The prosecutor sought leave to appeal to the Michigan Supreme Court, and Petitioner applied for leave to cross appeal. On May 23, 2007, Petitioner's cross appeal was denied, and the court reversed the court of appeals on the issue of the failure to instruct on statutory involuntary manslaughter, reinstating Petitioner's convictions. *See*

*People v. Smith*, 478 Mich. 64; 731 N.W.2d 411 (2007). Reconsideration was denied on July 9, 2007.

Petitioner filed his habeas corpus petition on July 7, 2008. He alleges that (1) his rights to due process and a fair trial were violated when the trial court failed to instruct the jury on involuntary manslaughter under Mich. Comp. Laws § 750.329, (2) the trial court improperly admitted evidence of "prior bad acts", (3) the prosecutor made an inappropriate appeal to the jury's sympathy, and (4) defense counsel's failure to object to the prosecutor's remarks constituted ineffective assistance of counsel. Respondent argues that Petitioner's first and second claims are not cognizable on habeas review and that the state court's adjudication of Petitioner's claims about the prosecutor and defense counsel did not amount to an unreasonable application of Supreme Court precedent.

## II. STANDARD

The Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. No. 104-132, 110 Stat. 1214 ("AEDPA") applies here because Petitioner filed his habeas petition after the effective date of the act, April 24, 1996. *Gillard v. Mitchell*, 445 F.3d 883, 889 (6th Cir. 2006) (citing *Frazier v. Huffman,* 343 F.3d 780, 787 (6th Cir. 2003) (citing *Lindh v. Murphy,* 521 U.S. 320, 336 (1997)), *cert. denied*, 549 U.S. 1264 (2007). As amended by the AEDPA, 28 U.S.C. § 2254(d) imposes the following standard of review that federal courts must use when reviewing applications for a writ of habeas corpus:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). The United States Supreme Court has explained the proper application of the "contrary to" clause of § 2254(d)(1) as follows:

> A state-court decision will certainly be contrary to [the Supreme Court's] clearly established precedent if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases . . . . A state-court decision will also be contrary to [the Supreme] Court's clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [the Court's] precedent.

*Williams v. Taylor*, 529 U.S. 362, 405-06 (2000); *see also Irick v. Bell*, 565 F.3d 315, 320 (6th Cir. 2009) ("A state court decision is 'contrary to' clearly established Federal law if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a different result.").

With respect to the "unreasonable application" clause of § 2254(d)(1), the Supreme Court has stated:

> [A] federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable . . .
>
> [A]n *unreasonable* application of federal law is different from an *incorrect* application of federal law . . . . Under § 2254(d)(1)'s "unreasonable application" clause, then, a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law

5

> erroneously or incorrectly. Rather, that application must also be unreasonable.

*Williams*, 529 U.S. at 409-11 (emphasis in original). Federal courts also must presume the correctness of state court factual determinations. 28 U.S.C. § 2254(d)(2), (e)(1) ("In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct."); *see also Cremeans v. Chapleau*, 62 F.3d 167, 169 (6th Cir.1995) ("We give complete deference to state court findings unless they are clearly erroneous."), *abrogated on other grounds, Mackey v. Dutton*, 217 F.3d 399, 413 (6th Cir. 2000).

### III.  DISCUSSION

#### A.  The Jury Instruction Claim

Petitioner argued at trial that he accidentally shot the victim. In keeping with this defense, he sought a jury instruction on statutory involuntary manslaughter under Mich. Comp. Laws § 750.329.[2] The trial court denied his request, but did instruct the jury on common law involuntary manslaughter under Mich. Comp. Laws § 750.321, which is based on a theory of gross negligence.[3] Petitioner argues that the trial court's failure to

---

[2] At the time, the statute provided that "[a]ny person who shall wound, maim or injure any other person by the discharge of any firearm, pointed or aimed, intentionally but without malice, at any such person, shall, if death ensure from such wounding, maiming or injury, be deemed guilty of the crime of manslaughter." *Smith*, 2005 WL 3500871, at *4 (quoting Mich. Comp. Laws § 750.329).

[3] Common law involuntary manslaughter has been codified in Mich. Comp. Laws § 750.321 and reads: "Any person who shall commit the crime of manslaughter shall be guilty of a felony punishable by imprisonment in the state prison, not more than 15 years or by fine of not more than 7,500 dollars, or both, at the discretion of the court."

give the requested jury instruction under § 750.329 violated his right to due process under the Fourteenth Amendment to the United States Constitution.

The Michigan Court of Appeals agreed with Petitioner that the trial court's denial of his request for a jury instruction under § 750.329 amounted to reversible error. The Michigan Supreme Court, however, held that the trial court correctly denied Petitioner's request for the instruction because statutory involuntary manslaughter under § 750.329 is not a necessarily-included lesser offense of second-degree murder.[4]  Petitioner contends that a rational view of the evidence supported a jury instruction on involuntary manslaughter under § 750.329 and that the Michigan Supreme Court's decision was based on an unreasonable determination of the facts.

The United States Supreme Court has held that, in capital cases, a jury must be permitted to consider a lesser-included, non-capital offense when the evidence would support such a verdict. *Beck v. Alabama*, 447 U.S. 625, 627 (1980). The lesser-included mandate has not been extended to non-capital cases. *See id.* at 638 n.14; *see also Campbell v. Coyle*, 260 F.3d 531, 541 (6th Cir. 2001) (stating that "the Constitution does not require a lesser-included offense instruction in non-capital cases") (citing *Bagby v. Sowders*, 894 F.2d 792, 795-97 (6th Cir. 1990) (*en banc*)). "[F]ailure to

---

[4] The Michigan Supreme Court explained that,

> Statutory involuntary manslaughter is not an "inferior" offense of second-degree murder under [Mich. Comp. Laws §] 768.32(1) because it contains elements – that the death resulted from the discharge of a firearm and that the defendant intentionally pointed the firearm at the victim – that are not subsumed in the elements of second-degree murder.

*Smith*, 731 N.W.2d at 412.

instruct on a lesser included offense in a noncapital case is not 'such a fundamental defect as inherently results in a miscarriage of justice or an omission inconsistent with the rudimentary demands of fair procedure.'" *Scott v. Elo*, 302 F.3d 598, 606 (6th Cir. 2002) (quoting *Bagby*, 894 F.2d at 797).

Petitioner was not charged with a capital offense, and his jury was not presented with an "all-or-nothing" choice of acquitting him or finding him guilty as charged. *Cf. Schad v. Arizona*, 501 U.S. 624, 645-48 (1991). The jury was given a third option of finding him guilty of manslaughter under Mich. Comp. Laws § 750.321. Thus, the fundamental concern in *Beck*, that a jury which was not convinced of the defendant's guilt as charged might nonetheless vote for a capital conviction if the only alternative was to set the defendant free, 447 U.S. at 642-43, is not present here. Furthermore, "[w]hether one state offense is a lesser-included offense of another offense is a question of state law," *Malicoat v. Mullin*, 426 F.3d 1241, 1252 (10th Cir. 2005), and "a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus." *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) (citing *Estelle v. McGuire,* 502 U.S. 62, 67-68 (1991), and *Mullaney v. Wilbur,* 421 U.S. 684, 691 (1975)); *accord Danforth v. Minnesota*, -- U.S. --, 128 S.Ct. 1029, 1047 (2008) (Roberts, C.J., dissenting) ("State courts are the final arbiters of their own state law . . . ."); *Israfil v. Russell*, 276 F.3d 768, 771 (6th Cir. 2001) (citing *Hutchison v. Marshall,* 744 F.2d 44, 46 (6th Cir. 1984) for the principle that "state courts are the final authority on state law"). In conclusion, Petitioner's claim that he was entitled to a jury instruction for statutory involuntary manslaughter is not cognizable on habeas review.

## B.  The "Other Acts" Claim

Before trial, the prosecutor sought permission to introduce evidence that, on three prior occasions, Petitioner pointed or discharged a gun at various individuals.  The prosecutor stated that his intent was not to show that Petitioner had a pattern of abusing a victim, but to show that Petitioner knew how to handle weapons and that he intentionally shot Ms. Moomaw.  (Hr'g Tr. Feb. 18, 2004, at 5-6); Mich. R. Evid. 404(b)(1) (prohibiting the admission of prior crimes, wrongs, or acts as evidence of future criminal propensity, but allowing it for limited purpose "such as proof of motive, opportunity, intent, preparation, . . . knowledge, identity, or absence of mistake or accident.")  The trial court ruled that the "other acts" evidence was "clearly probative" of the issues and admissible, because Petitioner's defense was that he accidentally discharged the weapon.  (*Id.* at 6.)  At trial, the prosecutor produced Nathan Pellow, who testified that Petitioner fired a gun over Pellow's head on November 2, 2003.  (Trial. Tr. Apr. 13, 2004, at 20-38).  Petitioner alleges that there was no physical evidence to support this testimony and that the prosecutor merely used uncorroborated and prejudicial testimony for the improper purpose of showing that he had a propensity to commit the crime.

The Michigan Court of Appeals held that the trial court properly granted permission to elicit Nathan Pellow's testimony concerning the incident on November 2, 2003.  The Court of Appeals stated that the evidence was relevant and material, given Petitioner's allegation that his inexperience with firearms resulted in the accidental shooting of Ms. Moomaw.  The Court of Appeals also stated that the prejudicial effect of the evidence did not substantially outweigh its probative value.

Petitioner claims that the state court's decision to admit "propensity" evidence was contrary to clearly established federal law, but "[t]here is no clearly established Supreme Court precedent which holds that a state violates due process by permitting propensity evidence in the form of other bad acts evidence." *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003); *see also Bey v. Bagley*, 500 F.3d 514, 519-23 (6th Cir. 2007), *cert. denied*, -- U.S. --, 128 S. Ct. 1704 (2008). Importantly, "[t]rial court errors in state procedure and/or evidentiary law do not rise to the level of federal constitutional claims warranting relief in a habeas action unless the error renders the proceeding so fundamentally unfair as to deprive the petitioner of due process under the Fourteenth Amendment." *McAdoo v. Elo*, 365 F.3d 487, 494 (6th Cir. 2004).

As an initial matter, it was defense counsel who first raised the issue of Petitioner's prior acts. Defense counsel elicited testimony from Jaimie Crawford that Petitioner had pointed a gun at Ms. Moomaw on a prior occasion. (Trial Tr. Apr. 12, 2004, at 183). As support for his position, however, Petitioner cites to *Old Chief v. United States*, 519 U.S. 172 (1997). In that case, the Court overturned the defendant's conviction because an alternative piece of evidence, the defendant's proffered stipulation to his status as a felon, carried the same evidentiary weight as the prosecutor's presentation of the defendant's past acts and did not present the same prejudicial danger as introducing the past conviction into the record. *Id.* at 186. Because the stipulation was an alternative piece of evidence that was equally probative but far less prejudicial, the Court ruled that the other acts evidence should have been excluded. *Id.* at 191-92. In Petitioner's case, there was no similar alternative substitute for Nathan Pellow's testimony.

10

Petitioner also cites *United States v. Merriweather*, 78 F.3d 1070 (6th Cir. 1996), as support for his position. In *Merriweather*, the court overturned the defendant's drug conviction because evidence of a prior conspiracy was admitted for the general purpose of opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake. *Id.* at 1077. Most of those purposes were not an issue in the case and, although identity and intent would have been legitimate purposes based on the evidence, they were not explained to the jury. *Id.* The Sixth Circuit concluded that the trial court's improper jury instruction permitted the jury to draw the propensity inference that was forbidden by Federal Rule of Evidence 404(b). *Id.* at 1079. The instant case does not suffer from the same problem as *Merriweather,* because the evidence here was admitted for the specific purpose of disproving the defense theory of an accidental shooting, and relied on the evidence to demonstrate only knowledge and absence of mistake. (Hr'g Tr. Feb. 18, 2004, at 5-6.) Further, in contrast to *Merriweather*, immediately after Nathan Pellow testified, the trial court cautioned the jurors that they could consider Pellow's testimony for only one purpose: "whether the evidence tend[ed] to show that the Defendant acted purposely, that is not by accident or mistake or because he misjudged the situation, or that the Defendant had knowledge of and familiarity with firearms." (Trial Tr. Apr. 13, 2004, at 30). The court stated that the evidence must not be considered for any other purpose, such as whether it showed that Petitioner was a bad person and likely to commit a crime because they thought he was guilty of other bad conduct. (*Id.*) The court concluded its cautionary instruction by stating that the jury must find Petitioner not guilty unless they were convinced beyond a reasonable doubt that Petitioner committed the charged crimes. (*Id.*) This instruction was repeated at the close of the case during

11

the trial court's charge to the jury. (*Id.* at 105-06). In sum, Petitioner has failed to show that the admission of "other acts" evidence was fundamentally unfair or worked to deprive him of due process such that the state court's decision was contrary to, or a misapplication of, clearly established federal law, as determined by the Supreme Court.

### C. The Prosecutorial Misconduct Claim

Petitioner's third claim alleges that he was denied his constitutional right to due process and a fair trial because the prosecutor improperly appealed to the jury's sympathy during his opening statement and closing argument. The Michigan Court of Appeals held that, although the prosecutor's comments were "emotionally charged," they were only a small portion of the prosecutor's overall argument and they did not deprive Petitioner of a fair trial. Further, the court of appeals stated that Petitioner had not overcome the presumption that defense counsel provided effective assistance.

For Petitioner to prevail on his claim of prosecutorial misconduct, he must demonstrate that the prosecutor infringed on a specific constitutional right or infected the trial with such unfairness as to make the resulting conviction a denial of due process. *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974). The complained of conduct must be both improper and flagrant. *Broom v. Mitchell*, 441 F.3d 392, 412 (6th Cir. 2006), *cert. denied*, 549 U.S. 1255 (2007).

Petitioner bases his claim on the prosecutor's opening statement, in which he stated that,

> Most teenage girls spend their birthday celebrating with friends and
> family. They go to a party, go out to dinner or to some social event.
> On Ashley Moomaw's 17th birthday, she was with friends and
> family and loved ones. But unlike most teenage girls, for Ashley
> Moomaw, there were no presents, there wasn't no cake (sic), there

> were no hugs and kisses from her family members. Instead, for
> Ashley Moomaw's 17th birthday, she received a casket, funeral
> service and burial.

(Trial Tr., Apr. 12, 2004, at 5-6). The prosecutor also told the jury that Petitioner caused the death of "an attractive, intelligent 16-year-old teenager with a bright future." (*Id.* at 6). And in his closing argument, the prosecutor stated that Ms. Moomaw had been a daughter, granddaughter, sister, and friend during her lifetime, but was only a memory now. (Trial Tr. Apr. 13, 2004, at 66). Petitioner contends that these comments likely caused a conviction based on an emotional response from the jury, as opposed to the evidence offered at trial.

### 1. The Propriety of the Remarks

To be actionable on habeas review, the prosecutorial conduct must first be improper. *Broom*, 441 F.3d at 412. "[A] prosecutor cannot make statements 'calculated to incite the passions and prejudices of the jurors,'" *Beuke v. Houk*, 537 F.3d 618, 649 (6th Cir. 2008) (citing *Gall v. Parker*, 231 F.3d 265, 315 (6th Cir. 2000), *overruled on other grounds as recognized in Bowling v. Parker*, 344 F.3d 487, 501 n. 3 (6th Cir. 2003)). However, a prosecutor "should not be required to present . . . closing arguments that are devoid of all passion." *Byrd v. Collins*, 209 F.3d 486, 532 (6th Cir. 2000) (quoting *Williams v. Chrans*, 945 F.2d 926, 947 (7th Cir. 1991).

The remarks in question here may have contained emotional themes, but "did not mischaracterize the applicable law or the relevant evidence." *Beuke*, 537 F.3d at 650. Giving the statements their highest emotional reflection, they "merely reflected a somewhat overzealous attempt to persuade the jury." *Id.* Some sympathy for Ms. Moomaw or her family was inevitable, given her youth and violent death. Indeed,

defense counsel pointed out that the victim's death was "a tragedy." (Trial Tr. Apr. 12, 2004, at 15). Ms. Moomaw's father subsequently testified that Ms. Moomaw's funeral occurred on what would have been her seventeenth birthday. (Trial Tr. Apr. 12, 2004, at 28). The court concludes that, taken in context, the prosecutor's remarks about Ms. Moomaw were not improper.

### 2. Flagrancy

Assuming the prosecutor's emotional remarks were improper, Petitioner must also demonstrate that the remarks constituted "flagrant" conduct. *Broom*, 441 F.3d at 412. When determining whether a prosecutor's comments were flagrant, courts must consider (1) whether the remarks tended to mislead the jury or to prejudice the accused, (2) whether they were isolated or extensive, (3) whether they were deliberately or accidentally placed before the jury, and (4) the strength of the evidence against the accused. *United States v. Carroll*, 26 F.3d 1380, 1385 (6th Cir. 1994). First, while the disputed remarks were deliberately made, they were isolated, appearing only in a few sentences of the prosecutor's opening and closing statements. It cannot be said that the remarks misled the jury, as both defense counsel and the trial court cautioned the jurors not to let sympathy influence their verdict. (Trial Tr. Apr. 12, 2004, at 14-16; Trial Tr. Apr. 13, 2004, at 98). The trial court also informed the jurors that the attorneys' opening statements and closing arguments were not evidence, but were meant to help the jurors understand the evidence and the parties' respective theories. (Trial Tr. Apr. 8, 2004, at 107; Trial Tr. Apr. 12, 2004, at 5; Trial Tr. Apr. 13, 2004, at 100). Jurors are presumed to follow the instructions provided by the court. *Richardson v. Marsh,* 481 U.S. 200, 206 (1987) (citing *Francis v. Franklin,* 471 U.S. 307, 325 n. 9 (1985)).

14

Finally, there was significant evidence from which the jury could have inferred Petitioner's guilt. Defense counsel did not deny that Petitioner was guilty of a felony firearm violation, nor that Petitioner shot and killed Ms. Moomaw. (Trial Tr. Apr. 12, 2004, at 16-17; "Let me be real clear about one thing. Randy Smith is guilty. He's guilty of having that weapon in his hand. He's guilty of having that weapon fire from his hand and the result of that was that Ashley Moomaw died . . . the facts show that he killed her."). Petitioner's defense was that did not intend to kill Ms. Moomaw and that he was merely guilty of manslaughter due to his gross negligence. (Trial Tr. Apr. 13, 2004, at 91-93).

The jury could infer, from the fact that Petitioner fled the scene and did not call police or try to revive the victim, that the shooting was not accidental. The jury also heard testimony from an eye-witness who claimed Petitioner instructed her not to tell anyone about the incident and to say that the victim shot herself. (Trial Tr. Apr. 12, 2004, at 164.) There was additional evidence that Petitioner had some familiarity with guns, that the safety was turned off, that the gun did not malfunction or fire accidentally during testing by a firearms expert, that it took six to seven pounds of pressure to shoot the gun, and that Petitioner knew the gun was loaded.

Thus, given that the remarks, in context, were not misleading and were isolated statements amongst the significant strength of evidence against the accused, the court cannot conclude that the remarks were "flagrant," *Carroll*, 26 F.3d at 1385, and Petitioner's claim of prosecutorial misconduct is denied.

### D.  Ineffective Assistance of Counsel Claim

15

Finally, Petitioner asserts that his trial attorney was ineffective for failing to object to the prosecutor's emotional remarks about the victim. (Pet'r's Mot. at 20-21). The Michigan Court of Appeals determined that Petitioner had not overcome the presumption that defense counsel provided effective assistance. The court agrees.

To demonstrate that trial counsel was ineffective, Petitioner must meet a two-pronged test. *Strickland v. Washington*, 466 U.S. 668 (1984). Petitioner must show that (1) counsel's performance fell below the objective standard of reasonableness and (2) a reasonable probability exists that the result of the trial would have been different but for counsel's conduct. *Id.* at 688, 694. Because of the difficulties inherent in evaluating an attorney's performance, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id.* at 689 (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)). In a federal habeas action, judicial scrutiny of defense counsel's conduct is "doubly deferential." *Yarborough v. Gentry*, 540 U.S. 1, 6 (2003) (*per curiam*). A habeas petitioner must establish a violation of *Strickland's* two-pronged test and show that the state applied *Strickland* in an objectively unreasonable manner. *Bell v. Cone*, 535 U.S. 685, 698-99 (2002).

As discussed, the prosecutor made emotionally-tinged comments during his opening statement and closing argument. Instead of objecting to the prosecutor's remarks about the victim, defense counsel effectively undermined the comments by stating that the prosecutor had attempted to appeal to the jurors' emotions – despite having told the jurors that sympathy played no part in the case. (Trial Tr. Apr. 12, 2004,

16

at 15.) Defense counsel acknowledged the fact that Ms. Moomaw's death was a tragedy, but he emphasized the fact that sympathy for the victim and her family should not be a factor in the case. (Trial Tr. Apr. 12, 2004, at 14-16, 18). The court cannot conclude that defense counsel's approach was less effective than a formal objection at the time. Furthermore, because the prosecutor's remarks were not improper, it cannot be said that defense counsel's performance fell below a standard of reasonableness. *See Norris v. Schotten*, 146 F.3d 314, 336 (6th Cir. 1998) (stating that "counsel cannot be deemed ineffective for failing to raise frivolous claims."). The court therefore finds that defense counsel's failure to lodge an objection to the prosecutor's opening statement and closing argument did not amount to deficient performance.

Even if counsel's performance, in failing to object, were to be deemed deficient, the deficient performance did not prejudice the defense. As discussed, there was substantial evidence from which a jury could have determined Petitioner's guilt. Further, the trial court made clear that the attorneys' opening statements and closing arguments were not evidence. Thus, there is no reasonable probability that the result of the trial would have been different but for counsel's failure to object, and Petitioner's claim of ineffective assistance of counsel fails.

### E.  Certificate of Appealability

A petitioner must receive a certificate of appealability ("COA") in order to appeal the denial of a habeas petition for relief from either a state or federal conviction. 28 U.S.C. §§ 2253(c)(1)(A), (B). A district court, in its discretion, may decide whether to issue a COA at the time the court rules on a petition for a writ of habeas corpus or may wait until a notice of appeal is filed to make such a determination. *See Castro v. United*

*States*, 310 F.3d 900, 903 (6th Cir. 2002); *Lyons v. Ohio Adult Parole Auth.*, 105 F.3d 1063, 1072 (6th Cir. 1997), *overruled in part on other grounds by Lindh v. Murphy*, 521 U.S. 320 (1997). In denying the habeas petition, the court has studied the case record and the relevant law, and concludes that, as a result, it is presently in the best position to decide whether to issue a COA. *See Castro*, 310 F.3d at 901 (quoting *Lyons*, 105 F.3d at 1072 ("[Because] 'a district judge who has just denied a habeas petition . . . will have an intimate knowledge of both the record and the relevant law,'" the district judge is, at that point, often best able to determine whether to issue the COA.)).

A court may issue a COA "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). A petitioner must "sho[w] that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). In this case, the court concludes reasonable jurists would not debate the court's conclusion Petitioner does not present any claims upon which habeas relief may be granted. Therefore, the court will deny a certificate of appealability.

## IV. CONCLUSION

For the reasons stated above, IT IS ORDERED that Petitioner's Petition for Habeas Corpus [Dkt. #1] is DENIED.

IT IS FURTHER ORDERED that the court DECLINES to grant Petitioner a certificate of appealability.

                                                s/Robert H. Cleland
                                                ROBERT H. CLELAND
                                                UNITED STATES DISTRICT JUDGE

Dated: July 31, 2009

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, July 31, 2009, by electronic and/or ordinary mail.

                                                  s/Lisa G. Wagner
                                                  Case Manager and Deputy Clerk
                                                  (313) 234-5522